# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAY ALLEN LUENSE, PAMELA PEARSON, DANIEL F. SETTNEK and NEIL ROSE, Individually and as representatives of a class of participants and beneficiaries on behalf of the Konica Minolta 401(k) Plan, <br><br> Plaintiffs, <br><br> v. <br><br> KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., BOARD OF DIRECTORS OF KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., KONICA MINOLTA 401(K) PLAN COMMITTEE, SANDRA SOHL, SUSAN MCCARTHY, and JOHN DOES 1-30, <br><br> Defendants. | CIV. NO.: 2:20-cv-06827 (JMV- MF) |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITIES REGARDING DEFENDANTS' MOTION TO DISMISS

Plaintiffs have now filed two notices of supplemental authority, *see* Dkt. No. 40 ("First Notice") and Dkt. No. 43 ("Second Notice"), in support of their Opposition to Defendants' Motion to Dismiss (Dkt. No. 35) – both of which were filed without leave of this Court.[1] The Second Notice purports to re-argue the sufficiency of nearly the entire complaint by reference to not one, but two, new out-of-Circuit district court cases: *Jones v. Coca-Cola Consolidated, Inc.*, No. 3:20-CV-00654-FDW-DSC, 2021 WL 1226551 (W.D.N.C. Mar. 31, 2021), and *Davis v.*

---

[1] *See J.L. v. Harrison Twp. Bd. of Educ.*, No. 14-2666 (RMB/JS), 2016 WL 4430929, at *15 (D.N.J. Aug. 19, 2016) ("[M]any courts in the District of New Jersey permit the filing of a notice of supplemental authority, but only with leave of the court either via the filing of a formal motion or an informal request for leave to file such a notice."); *Gonzalez v. Lyft, Inc.*, No. 19-20569 (BRM) (JAD), 2020 WL 7183573, at *1 n.1 (D.N.J. Oct. 13, 2020) (similar). Defendants did not object to Plaintiffs' First Notice because it dealt with one narrow legal question.

1

*Magna International of America*, No. 20-11060, 2021 WL 1212579 (E.D. Mich. Mar. 31, 2021). This Court should reject the Second Notice as both procedurally improper because it was filed without leave, and substantively improper because it amounts to an unwarranted sur-reply.

Even if the Court considers the merits of the Second Notice, the two new cases Plaintiffs cite merely establish the unremarkable proposition that some cases state plausible ERISA breach of fiduciary duty claims with respect to investment selection and recordkeeping expenses. Of course, in other cases the allegations regarding investment selection and recordkeeping expenses are insufficient to state a claim – including in a number of cases that were also decided since the parties completed their motion to dismiss briefing in this case on October 20, 2020. *See, e.g., Kong v. Trader Joe's Co.*, No. 20-cv-5790 PA (JEMx), 2020 WL 7062395, at *5 (C.D. Cal. Nov. 30, 2020) (holding plaintiffs failed to state a claim for breach of fiduciary duty where they merely alleged that the plan included too many actively managed investments, and failed to allege meaningful benchmarks and/or comparators for investment and recordkeeping fees); *Kurtz v. Vail Corp.*, No. 1:20-CV-00500-RBJ, 2021 WL 50878, at *10-12 (D. Colo. Jan. 6, 2021) (holding plaintiff failed to state a claim for breach of fiduciary duty where she merely alleged that plan failed to offer the lowest-share class for certain funds, that certain funds were more expensive than alternatives, and that the plan contained too many actively managed funds); *Anderson v. Intel Corp.*, No. 19-CV-04618-LHK, 2021 WL 229235, at *8, *10 (N.D. Cal. Jan. 21, 2021) (holding plaintiffs failed to state a claim where they merely alleged poor investment performance and failed to allege meaningful benchmarks for investment fees); *Wehner v. Genentech, Inc.*, No. 20-CV-06894-WHO, 2021 WL 507599, at *1 (N.D. Cal. Feb. 9, 2021) (holding plaintiff failed to state a claim for breach of fiduciary duty because complaint contained

no allegations sufficient to allow court to plausibly infer that fiduciaries followed a deficient process in selecting investments and negotiating recordkeeping fees).

The allegations in this case much more closely align with the cases where no plausible claim was stated than with the allegations in *Jones* and *Davis* – which are readily distinguishable from the facts alleged here.

*First,* both *Jones* and *Davis* involved specific allegations that defendants failed to offer the lowest-cost share classes (i.e., institutional classes instead of retail classes) or investment vehicles (i.e., collective trusts or separate accounts instead of mutual funds) of a given investment, even though they had "identical underlying investments." *Jones*, 2021 WL 1226551 at *5; *see also Davis*, 2021 WL 1212579 at *7 ("Plaintiffs also allege that the Investment Committee should have selected lower-cost share classes of mutual funds, where available."). While Plaintiffs invoke these holdings, *see* Second Notice at 3, the Complaint in this case does not identify a single alternative lower-cost share class or investment vehicle Defendants should have utilized instead.

*Second*, both *Jones* and *Davis* involved other allegations regarding the prudence and loyalty of investment decisions that are not at issue here. *See Jones*, 2021 WL 1226551 at *1-2 (alleging that plan investments were too risky, and that the overall costs of the plans investments were "double that of similarly situated plans"); *Davis*, 2021 WL 1212579, at *5 ("Plaintiffs allege circumstantial facts supported by charts making benchmark comparisons"); *id*. at *10 ("Plaintiffs' factual allegations share a distinction recognized by other courts in considering whether the plaintiffs have plead sufficient allegations to plausibly state a claim for breach of prudence. The Plan's investment consultant was Principal Financial, the recordkeeper was also Principal Financial, and the trustee was Principal Trust . . . . Out of the 20 funds offered by the

3

Plan, 17 of them bear Principal's name. Plaintiffs allege that such a structure is rife with potential conflicts of interest because Principal and its affiliates were placed in positions that allowed them to reap profits from the Plan at the expense of Plan participants.") (cleaned up).  Again, there are no such allegations in this case.[2]

*Third*, *Jones* did not independently analyze the sufficiency of plaintiffs' recordkeeping allegations at all.  Instead, the court "decline[d] to address" the issue in light of its conclusion that plaintiffs' allegations regarding investment expenses stated a claim.  *Jones*, 2021 WL 1226551, at *5.[3]  In any event, it is noteworthy that plaintiffs in *Jones* alleged the plan paid triple what the plan's recordkeeping "services were worth . . . per participant." *Id*. at *2.  Similarly, the plaintiffs in *Davis* alleged the plan paid between triple and quadruple what other plans paid for recordkeeping expenses.  *Davis*, 2021 WL 1212579, at *9.  By contrast here, for all but one year during the class period, the recordkeeping fees were within the range Plaintiffs alleged were reasonable.  *See* Dkt. No. 38 at 16.[4]

---

[2] While Plaintiffs attempted to label individual alternative funds as "benchmarks," *see* Dkt. No. 23-1 at 15-18, recent decisions confirm that "simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks . . . ." *Anderson*, 2021 WL 229235, at *8.  As discussed in Defendants' reply brief, the *AutoZone* decision to the contrary "stands alone in its refusal to consider the issue at the motion to dismiss stage." Dkt. No. 38 at 8-9.  While *Davis* cites *AutoZone*, it also reiterates (agreeing with Third Circuit precedent) the need for "[c]omparisons to meaningful benchmarks of competing funds," in order to "establish a 'plausible claim for breach of the fiduciary duty of prudence," *Davis*, 2021 WL 1212579, at *5, and did not involve the types of alleged "benchmarks" at issue here – which are simply individual alternative funds cherry-picked with hindsight.  *See* Dkt. No. 23-1 at 18-19.

[3] The court cited no authority for this theory, which Plaintiffs have not advanced here.

[4] With respect to *Davis*' holding that "at this stage Plaintiffs need not allege why the fees were not justified by the services provided," *Davis*, 2021 WL 1212579, at *10 (citing *Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 479 (M.D.N.C. 2015)), Plaintiffs declined to raise this argument in their Opposition, and a party "cannot raise new arguments in a Notice of Supplemental Authority." *Hodges v. Sch. Bd. of Orange Cty., Fla.*, No. 6:11-CV-135-ORL-36, 2012 WL 5457427, at *4 n.5 (M.D. Fla. Nov. 8, 2012).  In any event, *Davis* goes against the weight of authority on this issue, which, as confirmed by another recent decision, holds that "a plaintiff must plead administrative fees that are excessive in relation to the *specific* services the

Notably, neither *Jones* nor *Davis* address the central theory in the Complaint that the Plan should have included more index funds.  *See* Compl. ¶¶ 82-89, 100, 114.  Recent decisions confirm that this theory remains unviable.  *See Kong*, 2020 WL 7062395, at *4; *Kurtz*, 2021 WL 50878, at *10; *Wehner*, 2021 WL 507599, at *10; *see also* Dkt. No. 23-1 at 11-13; Dkt. No. 38 at 5-7.

Finally, Plaintiffs raise the same standing issue that they raised in the First Notice regarding the relevance of the Supreme Court's decision in *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615 (2020).  In *Thole*, the Supreme Court held that defined-benefit plan participants could not sue for breach of fiduciary duty over bad investment decisions until, as the dissent characterized it, "their pensions are on the verge of default."  140 S. Ct. at 1623 (Kagan, J., dissenting).  On that particular set of facts, the Supreme Court noted that it was "[o]f decisive importance . . . [that] the plaintiffs' retirement plan is a defined-benefit plan, not a defined-contribution plan," because "[i]n a defined benefit-plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions."  *Id*. at 1618.  This does not mean, however, that nothing the Supreme Court said about Article III standing in *Thole* applies outside of the context of defined-benefit plans.  To the contrary, as a recent decision correctly recognized, the Supreme Court's holding in *Thole* that ERISA cannot confer standing where it would otherwise be lacking under Article III of the U.S. Constitution, is not limited to defined-benefit plans.  *See Anderson*, 2021 WL 229235, at *14 ("Although *Thole* concerned a defined-benefit plan governed by ERISA, rather than the defined-contribution plan at issue in the instant case, the Supreme Court made clear that

---

recordkeeper provided to the *specific* plan at issue." *Wehner*, 2021 WL 507599, at *5 (collecting cases, including two appellate decisions).  *See also* Dkt. No. 23-1 at 26-27; Dkt. No. 38 at 16-17.

5

plaintiffs who bring claims under ERISA must satisfy Article III standing. . . . The Supreme Court explained that although plaintiffs argued that ERISA provided plan participants with a general cause of action to sue for equitable relief, that 'cause of action does not affect the Article III standing analysis.'").

This is exactly the position Defendants took in their Response to the First Notice: "the Supreme Court's rule that there is no ERISA exception to Article III and causes of action under 29 U.S.C. § 1132(a) do not affect the Article III standing analysis holds true irrespective of the type of plan at issue." Dkt. No. 41 at 2-3 (cleaned up). This rule is relevant here because Plaintiffs' theory of standing is that they do not need to show an injury – as is required for Article III standing – from funds they did not invest in because 29 U.S.C. § 1132(a) says they can bring the claims anyway. *See* Dkt. No. 41 at 3; Dkt. No. 38 at 1-2. That theory is wrong under *Thole*. The courts that have continued to approve of that theory after *Thole* (including *Jones* and *Davis*) have not persuasively addressed this issue.

Dated: April 15, 2021

  /s/ Philip W. Crawford  

Philip W. Crawford
(Attorney ID #023431980)
GIBBONS, P.C.
One Gateway Center
Newark, NJ 07102-5310
Telephone: (973) 596-4803
E-mail: pcrawford@gibbonslaw.com
*Attorneys for Defendants*

Respectfully submitted,

  /s/ Lars C. Golumbic  

Lars C. Golumbic (admitted *pro hac vice*)
Edward J. Meehan (admitted *pro hac vice*)
William J. Delany (Attorney ID # 049031994)
Samuel I. Levin (admitted *pro hac vice*)
Elizabeth L. Woods (admitted *pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006-5811
Tel: (202) 857-0620
E-mail: lgolumbic@groom.com
         emeehan@groom.com
         wdelany@groom.com
         slevin@groom.com
         ewoods@groom.com
*Attorneys for Defendants*

6