# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAY ALLEN LUENSE, PAMELA PEARSON, DANIEL F. SETTNEK, and NEIL ROSE, Individually and as representatives of a class of participants and beneficiaries on behalf of the Konica Minolta 401(k) Plan,<br><br>*Plaintiffs,*<br><br>v.<br><br>KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., BOARD OF DIRECTORS OF KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., KONICA MINOLTA 401(K) PLAN COMMITTEE, SANDRA SOHL, SUSAN MCCARTHY, and JOHN DOES 1-30,<br><br>*Defendants.* | Civil Action No. 20-6827<br>(JMV) (MF)<br><br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This putative class action, brought under the Employee Retirement Income Security Act ("ERISA"), arises out of allegations that fiduciaries of Konica Minolta's 401(k) plan breached their duties of loyalty and prudence and engaged in a prohibited transaction. Presently before the Court is Defendants' motion to dismiss Plaintiffs' Complaint. The Court reviewed all the submissions in support and in opposition[1] and considered the motion without oral argument

---

[1] Defendants' moving brief will be referred to as "Def. Br.," D.E. 23-1. Plaintiffs' opposition brief will be referred to as "Opp. Br.," D.E. 35. Defendants' reply brief will be referred to as "Reply," D.E. 38. Plaintiffs also submitted two notices of supplemental authority, D.E. 40, 43, to which Defendants filed responses, D.E. 41, 42, 45. On April 29, 2021 Plaintiffs filed a motion for leave to submit supplemental authority, D.E. 46, which Defendants opposed, D.E. 47, and to which Plaintiffs replied, D.E. 48. Plaintiffs filed a second motion for leave to file additional supplemental

pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons discussed below, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**.

## I.     FACTS AND PROCEDURAL HISTORY[2]

At issue in this matter is Konica Minolta Business Solutions U.S.A. Inc.'s ("Konica") 401(k) plan (the "Plan"). The named Plaintiffs are four individuals who participated in the Plan. *Id.* ¶¶ 19-22. They bring this action on behalf of themselves and a proposed class defined as "[a]ll persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between June 4, 2014 and the present (the 'Class Period')." *Id.* ¶ 50.

Defendant Konica is a New York corporation with its principal place of business in New Jersey. *Id.* ¶ 26. Konica is the sponsor, administrator, and a fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A). *Id.* ¶ 30. Defendant Sandra Sohl "has been the Director, Compensation, Benefits & HRIS at [Konica]" since April 2013. *Id.* ¶ 28. Defendant Susan McCarthy has been the Manager, Compensation & HRIS at [Konica] since April 2014." *Id.* ¶ 29. The "Board Defendants" are a group comprised of Konica's Board of Directors and each of its individual members during the Class Period (John Does 1-10). *Id.* ¶ 32. The "Committee Defendants" are a group comprised of both the Plan Committee to which Konica delegated certain administrative and investment related duties, and each of its members during the Class Period (John Does 11-20). *Id.* ¶ 35-38. The remaining Defendants, John Does 21-30, "include but are

---

authority on May 10, 2019, D.E. 49, which Defendants opposed, D.E. 50. The Court grants Plaintiffs' motions, D.E. 46, 49, and considers the parties' filings related to supplemental authority.

[2] The factual background is taken from the Complaint ("Compl."), D.E. 1. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

not limited to, Konica officers and employees where are/were fiduciaries of the Plan . . . during the Class Period." *Id.* ¶ 39.

The Plan is a single-employer "defined contribution" or "individual account" plan, within the meaning of 29 U.S.C. § 1002(34). *Id.* ¶ 41. This type of plan "confer[s] tax benefits on participating employees to incentivize saving for retirement." *Id.* ¶ 3. "[T]he Plan provides for individual accounts for each participant and for benefits based solely upon the amount contributed to those accounts, and any income, expense, gains and losses, and any forfeitures of accounts of the participants which may be allocated to such participant's account." *Id.* ¶ 41. As a result, the Plan's retirement benefits "are based solely on the amounts allocated to each individual's account." *Id.*

The Plan's participants may contribute to their account, subject to limitations of the Internal Revenue Code and other federal limits, and Konica matches a portion of employee contributions. *Id.* ¶¶ 44-46. Participants can "direct the investment of their contributions into various investment options offered by the Plan." *Id.* ¶ 44. The Plan Committee determines the appropriateness of the various investment offerings and monitors the performance of investments. *Id.* ¶ 47. During the Class Period, "[v]arious funds were available to Plan participants for investing." *Id.* ¶ 47. As of December 31, 2019, the Plan offered 27 different investment options to its participants. *Id.* ¶ 49. Of these options, some were "passively managed funds, which are "designed to track a market index like the Standard & Poor's 500," and others were "actively managed funds, which have a mix of securities selected by the fund manager based on his or her belief that they will beat the market." *Id.* ¶¶ 84-85. The Plan pays more for actively managed funds "in order to compensate the fund managers and their associates for the work associated with stock picking." *Id.* ¶ 85. The Plan's recordkeeper is Prudential Retirement Insurance and Annuity Company ("Prudential"),

which is paid "per participant recordkeeping and other administrative costs during the Class Period." *Id.* ¶ 136. The Plan fit the classification of a "Large" plan – as of December 31, 2017, the Plan had more than $810 million in assets and as of December 31, 2018, it had more than $766 million. *Id.* ¶¶ 6-7.

Plaintiffs allege that Defendants were fiduciaries of the Plan and that, pursuant to 29 U.S.C. § 1104(a)(1), they were required to manage and administer the Plan in the interest of the Plan's participants and bound by the duties of loyalty and prudence. *Id.* ¶¶ 59-60. As fiduciaries, 29 U.S.C. § 1105(a) provides that Defendants could be liable for another fiduciary's breach of responsibility. Defendants breached these duties, Plaintiffs allege, by including "many mutual fund investments that were more expensive than necessary and otherwise were not justified on the basis of their economic value to the Plan"; failing "to have a proper system of review in place to ensure that participants in the Plan were being charged appropriate and reasonable fees for the Plan's investment options"; and failing "to leverage the size of the Plan to negotiate lower expense ratios for certain investment options maintained and/or added to the Plan during the Class Period." *Id.* ¶¶ 66-67.

Plaintiffs filed their Complaint on June 4, 2020. D.E. 1. The Complaint asserts three claims: Count One alleges that Konica and the Committee Defendants breached the fiduciary duties of loyalty and prudence; Count Two alleges that Konica and the Board Defendants failed to adequately monitor other fiduciaries; and Count Three alleges a prohibited transaction based on excessive and unreasonable compensation in violation of ERISA. Compl. ¶¶ 142-161. The current motion followed.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]"  To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).  If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

III.    ANALYSIS

a.  Article III Standing

The Constitution provides that "judicial Power" extends to "Cases" and "Controversies[.]" U.S. Const. art. III, § 2.  To meet the case-or-controversy requirement, a plaintiff must show it has standing to sue.  *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted).  To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 358-59 (3d Cir. 2015)).  An injury-in-fact requires a plaintiff to show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A particularized injury means that it "must affect the plaintiff in a personal and individual way." *Id.* at 560, n.1.  A concrete injury refers to one that actually exists; one that is real and not abstract.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  In addition, "[t]he injury must be concrete in both a qualitative and temporal sense[.]" *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Defendants argue that Plaintiffs lack standing to assert claims related to the eighteen investment options in which they did not invest because they suffered no personal injury as a result of those investments.  Def. Br. at 24.[3]  Defendants further contend that Plaintiffs lack standing with respect to their allegations that the Plan should have included more index funds and their

---

[3] The Complaint indicates that 27 different investment options were available to Plan participants as of December 31, 2018.  Compl. ¶ 49.  Of these, 25 were challenged as imprudent.  *Id.* ¶ 10. The named Plaintiffs collectively participated in 7 of the 25 challenged investment options.  *Id.* ¶¶ 19-22.

allegations concerning the expense of the Plan's investment options; Defendants allege that Plaintiffs have failed to plausibly allege that they were injured or suffered losses in connection with these allegations. *Id.* at 25. In opposition, Plaintiffs submit that this argument has been rejected by courts across the country "because Plaintiffs' losses in their Plan investment options, as well as the higher recordkeeping fees they paid along with all other participants in the Plan are fairly and properly traceable to Defendants' breaches of the duties of prudence and loyalty as described in the Complaint." Opp. Br. at 12.

Defendants rely on *Thole v. U.S. Bank N.A.*, -- U.S. --, 140 S. Ct. 1615 (2020) for the proposition that Plan participants lack standing to represent the Plan itself unless they were personally injured by the challenged conduct. Def. Br. at 24-25. However, the *Thole* Court emphasized that it was "[o]f decisive importance" that the relevant retirement plan was a defined-benefit plan and not a defined-contribution plan. *Id.* at 1618. The Supreme Court explained as follows:

> In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions. By contrast, in a defined-contribution plan, such as a 401(k) plan, the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions.

*Id.* Pursuant to *Thole*, Plaintiffs have standing with respect to the investment funds in which they invested. *McGowan v. Barnabas Health, Inc.*, No. 20-13119, 2021 WL 1399870, at *3 (D.N.J. Apr. 13, 2021).

As for the remaining investment funds in which the Plans were invested but the named Plaintiffs were not, "*Thole* suggests . . . that a plaintiff has standing to sue on behalf of the Plan, even if that particular plaintiff was not invested in each one of the Plan's investment vehicles." *Id.* at *4. If a plan's participants "have alleged an injury to their own investments by virtue of the

Fiduciaries' mismanagement, sufficient to create a case or controversy for Article III purposes," then ERISA "grants the Participants a cause of action to sue on behalf of the Plan[]." *Id.* Since *Thole*, courts "have generally rejected the argument that a plaintiff's ERISA challenge must be confined to the individual funds in which he or she invested." *Id.* (citing district court cases).

The Complaint alleges that "Plaintiff's individual accounts in the Plan were harmed because they invested in investment options that would have been removed from the Plan had Defendants discharged their fiduciary duties." Compl. ¶ 18. Additionally, Plaintiffs allege that they and the Plan's other participants "suffered financial harm as a result of the imprudent investment options in the Plan" because they were deprived "of the opportunity to grow their retirement savings by investing in prudent options with reasonable fees, which would have been available . . . if Defendants had satisfied their fiduciary obligations." *Id.* ¶ 17. Plaintiffs allege Plan-wide injuries and, as a result, the Court finds that Plaintiffs have standing to challenge the Plan's management and to assert their ERISA claims. *In re Quest Diagnostics Inc. ERISA Litig.*, No. 20-07936, 2021 WL 1783274, at *2 (D.N.J. May 4, 2021).

### b. Defendants' Fiduciary Status

As a threshold matter, the Court must first consider whether Defendants were acting as fiduciaries under ERISA when taking the actions of which Plaintiffs complain. *Perrone v. Johnson & Johnson*, No. 19-923, 2020 WL 2060324, at *6 (D.N.J. Apr. 29, 2020). Defendants submit that the Committee was the sole fiduciary responsible for the actions Plaintiffs challenge and argue that Plaintiffs have not plausibly alleged that Konica, the Board, the individual members of the Board, and the individual members of the Committee functioned as fiduciaries with respect to the acts alleged in the Complaint. Def. Br. at 5.

"ERISA requires every plan to identify at least one 'named fiduciary' with the responsibility for plan administration." *Perrone*, 2020 WL 2060324 at *6 (citing 29 U.S.C. § 1102(a)(1)). Additionally, individuals who act in a fiduciary capacity are also considered fiduciaries of the plan, even if they are not expressly named. *Id.* ERISA provides that

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "Because an entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan, we must ask whether [the entity] is a fiduciary with respect to the particular activity in question." *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011) (internal quotation and citations omitted). Thus, when a breach of fiduciary duty is alleged, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary . . . when taking the action subject to complaint." *Id.* (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)).

Here, the relevant allegations concern the investment and administration of the Plan's assets and its recordkeeping expenses. Compl. ¶¶142-61. Most paragraphs in the Complaint make allegations against "Defendants" without specifying exactly which Defendant was responsible for each challenged action.[4] Because the allegations are charged against Defendants collectively, it is

---

[4] Defendants have not raised the issue of group pleading, and the Court will not address it *sua sponte*.

difficult to discern precisely what discretion each individual Defendant/group of Defendants had and how they exercised it.

Turning first to Konica, Plaintiffs allege that it is "the Plan sponsor, administrator, and a fiduciary of the Plan within the meaning of . . . 29 U.S.C. § 1002(21)(A)" because it is a named fiduciary under the Plan; it exercised discretionary authority and control over Plan management and/or over disposition of Plan assets; and it appointed Plan fiduciaries. Compl. ¶ 30. Further, Konica "has been responsible for 'handling the day-to-day operations of the Plan,' and . . . for the administrative and investment responsibilities associated with the Plan." *Id.* ¶ 31. Defendants argue that Plaintiffs' allegations that Konica is the Plan's sponsor is insufficient to create fiduciary status, and Plaintiffs' allegations that Konica was a named fiduciary and the Plan's administrator are insufficient because Konica delegated these responsibilities to the Committee. *Id.* at 6-7. Similarly, Defendants contend, appointing fiduciaries did not confer fiduciary responsibilities upon Konica. *Id.* at 7.

The Court agrees with Defendants that Konica is not a fiduciary of the Plan merely by virtue of being its sponsor. *See Fonti v. Health Prof'ls & Allied Emps.*, No. 13-4231, 2017 WL 1197759, at *9, n.7 (D.N.J. Mar. 31, 2017). However, Plaintiffs allege – and Defendants do not contest – that Konica is a named fiduciary of the Plan and the Plan's administrator.[5] Compl. ¶¶ 30-31; Def. Br. at 6. Nonetheless, the parties disagree as to whether Konica's delegation of its responsibilities as named fiduciary and Plan administrator absolved Konica of its fiduciary status. Def. Br. at 6; Opp. Br. at 17. Plaintiffs allege that Konica delegated the following Plan functions to the Committee: "[t]o act as a 'Named Fiduciary' under ERISA with respect to the control and

---

[5] The parties have not submitted a copy of the Plan with their pleadings or briefing.

management of assets of the Plan and provide oversight of the investments and funding policies and objectives of the Plan"; "[e]stablish and periodically review the investment management policies and/or guidelines of the Plan"; "[a]pprove the appointment of investment managers for the Plan, and the policies and operating procedures governing investment managers"; "[m]onitor the investment performance of the Plan"; "[r]eceive, review and keep on file reports of investment performance, financial condition, receipts and disbursements of the Plan's assets"; "[a]ppoint and retain individuals to assist in the administration of the Committee's duties under the Committee Charter and under the Plan, including consulting services as it may require or as may be required by any applicable law or laws"; "[a]ppoint and remove the trustee for the Plan and the Plan's trust"; and "[r]eport to the Board." Compl. ¶ 36. The Complaint fails to allege what (if any) discretionary authority Konica had post-delegation, and how Konica exercised that discretion. The Complaint fails to allege that any fiduciary duties were non-delegable or that Konica maintained fiduciary duties through other theories, such as agency.

The parties appear to agree, however, that upon delegation of its ERISA fiduciary duties, Konica maintained a duty to monitor the Committee's actions. Def. Br. at 6; Pl. Opp. at 14. As a result, the Count finds that Plaintiffs have plausibly alleged that Defendant Konica had a fiduciary responsibility to monitor the Committee's actions but have not adequately pled that Konica maintained any additional fiduciary responsibilities with respect to the alleged conduct.

The Court next considers whether Plaintiffs have sufficiently pled that the Board is a fiduciary. Plaintiffs allege that the Board has "discretion to authorize Konica to contribute annual profit-sharing amounts to the Plan participants." *Id.* ¶ 34. Defendants argue that this is insufficient to establish that the Board is a fiduciary because "decisions regarding how much to contribute to the Plan are not ERISA fiduciary acts." Def. Br. at 8. The Court agrees. Konica's contribution

of annual profit sharing is not at issue in this lawsuit. There are no further allegations in the Complaint as to the Board's discretion and how it exercised that discretion. As a result, Plaintiffs fail to sufficiently allege that the Board is a fiduciary with respect to the relevant actions.

Turning to the individual members of the Board, Plaintiffs allege that each Board Member "is/was a fiduciary of the Plan . . . during the Class Period, because each exercised discretionary authority to appoint and monitor Plan fiduciary who had control over Plan management and/or authority or control over management or disposition of Plan assets." Compl. ¶ 32. Defendants contend that this is insufficient to establish that the individual members were fiduciaries because "the appointment of fiduciaries does not render the person making the appointment a fiduciary with the same responsibilities as the appointee." Def. Br. at 8. Rather, Defendants continue, appointing a fiduciary only gives the appointor the duty to monitor and supervise the appointee. *Id.* Defendants add that Plaintiffs have failed to sufficiently allege that individuals on the Board – as opposed to the Board itself – had the authority to appoint Plan fiduciaries. *Id.* at 9. The Court agrees. The Complaint is devoid of plausible allegations that any individual member of the Board possessed or exercised discretionary authority over the appointment of Plan fiduciaries.[6] The Court concludes that Plaintiffs have failed to sufficiently plead that the individual members of the Board were fiduciaries.

Finally, the Court analyzes the fiduciary status of the individual members of the Committee. The only apparently relevant allegation in the Complaint is the conclusory assertion that "[t]he Committee and each of its members were fiduciaries of the Plan during the Class Period . . . because each exercised discretionary authority over management or disposition of Plan assets."

---

[6] Even if the Board Members did possess and exert this authority, as discussed above, by delegating their responsibilities to the Committee, the individual Board Members only retained a fiduciary duty to monitor the Committee – at least as alleged in the Complaint.

Compl. ¶ 37. This allegation is insufficient to plausibly plead that the individual Committee members were fiduciaries. The Complaint also references two individual Defendants – Sohl and McCarthy – who signed certain of the Plan's forms 5500 and served as fiduciaries, Compl. ¶¶ 28-29; however, these bare allegations are insufficient to establish that these individual Committee members had discretionary authority over the Plan.

The Court concludes that, in addition to the Committee – which Defendants agree is a fiduciary – Plaintiffs have plausibly alleged that Konica had a duty to monitor the Committee. Plaintiffs fail to plausibly allege that any other Defendants were fiduciaries with respect to the actions challenged in the Complaint.

### c. Breach of the Fiduciary Duties of Prudence and Loyalty (Count One)

ERISA's fiduciary duties are governed by 29 U.S.C. § 1104; "ERISA fiduciaries are required to act according to duties of prudence and loyalty to Plan participants." *In re Quest Diagnostics*, 2021 WL 1783274, at *3. These duties require fiduciaries to "act with the 'care, skill, prudence, and diligence under the circumstances' that would be expected of a prudent man, and do so 'in the interest of the participants and beneficiaries' and 'for the exclusive purpose' of 'providing benefits to [them]' while 'defraying reasonable expenses of administering the plan.'" *Id.* (alteration in original) (quoting 29 U.S.C. § 1104(a)(1)(A)-(B)). "To assert a claim for breach of fiduciary duty under ERISA, Plaintiffs must allege that: '(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan.'" *Peterson v. Ins. Servs. Office, Inc.*, No. 20-13223, 2021 WL 1382168, at *3 (D.N.J. Apr. 13, 2021) (quoting *Chaaban v. Criscito*, 468 F. App'x 156, 161-62 (3d Cir. 2012)).

Count One is brought against Konica and the Committee Defendants. Because Plaintiffs failed to plausibly allege that the individual Committee members were fiduciaries, or that Konica

had fiduciaries responsibilities beyond a duty to monitor the Committee, Count One fails to state a claim as to those Defendants. Defendants do not argue that Plaintiffs failed to adequately allege the causation element. Therefore, the Court considers only whether Plaintiffs adequately stated a claim that the Committee breached its fiduciary duties of prudence and loyalty.

### i. Duty of Prudence

"Under § 1104(a), fiduciaries are held to the prudent man standard of care, which is drawn from trust law." *Sweda*, 923 F.3d at 327 (citing *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015)). "A fiduciary must prudently select investments, and failure to 'monitor . . . investments and remove imprudent ones' may constitute a breach." *Sweda*, 923 F.3d at 328 (alteration in original) (citing *Tibble*, 135 S. Ct. at 1828-29). Additionally, fiduciaries "must . . . understand and monitor plan expenses." *Id.* "'Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan,' by decreasing its immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees." *Id.* (internal citation omitted) (quoting *Tibble*, 135 S. Ct. at 1826). "Fiduciaries must also consider a plan's 'power . . . to obtain favorable investment products, particularly when those products are substantially identical – other than their lower cost – to products the trustee has already selected.'" *Id.* at 328-29 (alteration in original) (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2019).

"Although hindsight cannot play a role in determining whether a fiduciary's actions were prudent, many allegations concerning fiduciary conduct are factual questions not properly addressed at the motion to dismiss stage." *In re Quest Diagnostics*, 2021 WL 1783274, at (internal quotations and citations omitted). Whether a fiduciary complied with the duty of prudence "is an inherently factual question." *McGowan*, 2021 WL 1399870 at *5 (internal quotation omitted). To

determine whether a fiduciary breached its duty of prudence, courts "look[] to its 'process rather than results' and inquir[e] whether 'it employed the appropriate methods to investigate and determine the merits of a particular investment.'" *Silva v. Evonik Corp.*, No. 20-2202, 2020 U.S. Dist. LEXIS 250206, at *9 (D.N.J. Dec. 30, 2020) (quoting *Sweda*, 923 F.3d at 333). "To survive a motion to dismiss, however, Plaintiffs need not 'directly allege how [Defendants] mismanaged the Plan,' so long as there is 'substantial circumstantial evidence' to permit the Court to 'reasonably infer that a breach had occurred.'" *Id.* (alteration in original) (quoting *Sweda*, 923 F.3d at 332). Because ERISA does not require fiduciaries "to scour the market to find and offer the cheapest possible fund," Plaintiffs who rely on "circumstantial evidence must . . . provide a sound basis for comparison – a meaningful benchmark – to show a prudent fiduciary in like circumstances would have selected a different fund." *Id.* (internal quotations omitted).

In reviewing the Complaint, "the Court may not parse [it] 'piece by piece to determine whether each allegation, in isolation is plausible.'" *Id.* (quoting *Sweda*, 923 F.3d at 221). "Instead, the Court employs a 'holistic approach' by considering all well-pleaded, non-conclusory allegations, including the 'range of investment options,' 'reasonableness of fees,' 'selection and retention of investment options,' and 'practices of similarly situated fiduciaries.' *Id.* (quoting *Sweda*, 923 F.3d at 331).

Here, the Complaint includes sufficient allegations that the Committee breached its duty of prudence. First, Plaintiffs adequately plead that the Plan included funds with higher expense ratios than comparable funds, and the Plan's funds failed to outperform the less-expensive comparable funds. For example, Plaintiffs allege that the Qualified Default Investment Alternative selected for the Plan – the Principal Lifetime Hybrid CIT Z target retirement date fund – was imprudent due to its unreasonable expense and underperformance as compared to less expensive

alternative target date funds. Compl. ¶ 48. In support, Plaintiffs include figures depicting that the Plan's target retirement date funds had net expense ratios of 0.29%, while comparable Vanguard funds had net expense ratios of 0.13 to 0.15%. *Id.* ¶ 103. The Complaint alleges that the comparable funds "employ the same investment strategies and have at least 90 percent similar holdings" to those in the Plan. *Id.* The Complaint continues that "for at least 20" of the Plan's funds, "there are many equivalent investments that would cost participants far less than the funds selected by Defendants." *Id.* ¶ 104.

Second, Plaintiffs sufficiently allege that many funds were retained in the Plan despite their underperformance as compared to their benchmarks. The Complaint includes comparisons of thirteen of the Plan's investments with one to five comparable low fee alternative funds. *Id.* ¶ 117. Plaintiffs compare the net expense ratios, average annual returns, and the performance of the funds in the Plan relative to their benchmarks. *Id.* The Complaint alleges that these figures demonstrate that Defendants failed to regularly analyze the Plan's investment options because a prudent investor would have removed consistently underperforming investments. *Id.* ¶¶ 112-16.

The Complaint also plausibly pleads a failure to monitor and/or control the Plan's recordkeeping expenses. Plaintiffs allege that the Committee failed to take steps to manage and control recordkeeping costs, such as leveraging the large number of participants in the Plan to negotiate lower per-participant recordkeeping fees; closely monitoring and tracking the recordkeeper's expenses "by demanding documents to summarize and contextualize the recordkeeper's compensation"; identifying all fees, including direct compensation and revenue sharing, to ensure that the recordkeeping fees are reasonable; and remaining informed about overall trends in the marketplace concerning the fees paid by other plans and the recordkeeping rates that are available. *Id.* ¶ 130, 133-135. To support its claims, the Complaint includes data on

the annual direct costs paid to Prudential from 2015-2018, which demonstrates that the cost per participant rose from $22.89 to $92.54 during the period. *Id.* ¶ 136. This is unreasonable, Plaintiffs allege, because the normal recordkeeping fees for a comparable plan would be between $20 and $40 per participant at the start of the Class Period, and should have been lower in the following years. *Id.* ¶ 138. Plaintiffs further aver that the increased in recordkeeping costs on a per participant basis indicates that the Committee failed to leverage the growing size of the Plan. *Id.* ¶ 139. These allegations are similar to those deemed sufficient to state a claim in *Sweda*, as well as in recent decisions from other courts in this District. *See Sweda*, 923 F.3d at 332; *McGowan*, 2021 WL 1399870 at *5; *Silva*, 2020 U.S. Dist. LEXIS 250206, at *12.

Defendants' arguments to the contrary are unavailing. Several arguments raised by Defendants view specific allegations in isolation and argue that, standing alone, they are implausible. For example, Defendants argue that "[t]he premise of Plaintiffs' claim is that there is a requirement to offer a certain number of passively managed index funds in a 401(k) plan," and that this is not a requirement under ERISA. Def. Br. at 12. Defendants also assert that Plaintiffs failed to plausibly allege that the index funds included in the plan were unreasonably expensive because Plaintiffs do not provide allegations concerning the expenses of two of the three index funds offered. Def. Br. at 13. The Third Circuit has instructed that "[t]he complaint should not be parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Sweda*, 923 F.3d at 331 (internal quotation omitted). Taking a holistic approach, as this Court must at the motion to dismiss stage, Plaintiffs have plausibly alleged violations of the duty of prudence.

Defendants also contend that Plaintiffs failed to plausibly allege a claim because the comparison funds were inappropriate or insufficient. For example, Defendants argue that Plaintiffs failed to sufficiently claim that the Plan's investment options underperformed their

benchmarks because the Complaint does not use the benchmarks listed in each fund's prospectus. Def. Br. at 15-19. Defendants also argue that actively managed funds cannot be compared with index funds. *Id.* at 20-21. These arguments are not properly considered at this stage because "an inquiry into whether the alternative funds Plaintiff[s] suggest[] are apt comparisons is a question of fact unsuitable for resolution on a motion to dismiss." *Silva*, 2020 U.S. Dist. LEXIS 250206, at *13 (alterations in original) (internal quotation omitted).

Additionally, Defendants submit that Plaintiffs' identification of cheaper and/or better alternative investments fails to state a claim because ERISA confers no duty to select the cheapest option or the best performing fund. Def. Br. at 18, 20. Again, this Court must employ a holistic approach and look to the Complaint's allegations as a whole; Plaintiffs' plausible allegations, taken together, create a reasonable inference of mismanagement. *McGowan*, 2021 WL 1399870, at *6.

Finally, in response to Plaintiffs' allegations that Defendants failed to monitor the Plan's investment options, Defendants argue that Plaintiffs' own allegations undermine this point because the Complaint alleges that the Plan removed several funds. Def. Br. at 21. Whether removing several funds satisfies the duty of prudence is ultimately a question on the merits. At this stage of the litigation, the Court must accept Plaintiffs' account of the facts and draw all inferences in Plaintiffs' favor. *Sweda*, 923 F.3d at 333. Viewing Plaintiffs' overall allegations of the Plan's mismanagement, the Court concludes that dismissal of Plaintiffs' duty of prudence claim as against the Committee at this early stage would be inappropriate. *See In re Quest Diagnostics*, 2021 WL 178274, at *4.

### i. Duty of Loyalty

ERISA also imposes a duty of loyalty and requires that fiduciaries act "with an eye single toward beneficiaries' interests." *McGowan*, 2021 WL 1399870, at *7 (quoting *Pegram v.*

*Herdrich*, 530 U.S. 211, 235 (2000)). "To plead a loyalty claim, courts look for allegations suggesting that the fiduciary made decisions benefitting itself or a third party." *Id.* "Accordingly, a plaintiff may not simply 'recast' a claim of imprudence as an independent claim of disloyalty without additional facts suggesting an improper motive or financial benefit." *Silva*, 2020 U.S. Dist. LEXIS 250206, at *19.

The Complaint includes few, if any, allegations to support a claim for breach of the duty of loyalty. Absent from the Complaint are any facts to suggest that the Committee was acting for its own benefit or for the benefit of a third party. Although Plaintiffs' opposition brief includes arguments that the Committee was acting for the benefit of Prudential, "it is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (quoting *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)), and Plaintiffs' Complaint does not include sufficient factual allegations to support these contentions. As a result, Defendants' motion to dismiss is granted as to Count One with respect to the duty of loyalty.

### d. Failure to Adequately Monitor Other Fiduciaries (Count Two)

Count Two is brought against Defendants Konica, the Board, and the individual members of the Board; however, as previously discussed, the Complaint sufficiently alleges only that Konica had a duty to monitor the Committee. The Court will therefore analyze Count Two solely as to Konica.

"Courts recognize that when a fiduciary has and exercises the power to appoint and remove plan administrators, it has the duty to monitor those appointees." *McGowan*, 2021 WL 1399870, at *8. Further, "[c]ourts have been willing to find a failure to monitor claim if the plaintiff has adequately alleged a breach of fiduciary duty claim." *Id.* Because the Complaint sufficiently

pleads that the Committee breached the duty of prudence, Plaintiffs' failure to monitor claim also survives. *See id.* Defendants' motion is denied as to Count Two vis-à-vis Konica.

### e. Prohibited Transaction – Excessive and Unreasonable Compensation for Services (Count Three)

Count Three alleges a violation of 29 U.S.C. § 1108(b)(2) based on excessive and unreasonable compensation paid to the Plan's recordkeeper, Prudential. Compl. ¶¶ 156-161. As an initial matter, unlike Counts One and Two, Plaintiffs do not specify against which Defendant(s) Count Three is brought. One allegation under Count Three refers to "Defendants," while another refers to "Defendant." Compl. ¶¶ 160, 161. Because "prohibited transaction claims require that an action be taken by an ERISA fiduciary," and the Complaint plausibly alleges only that the Committee was a fiduciary with respect to any duties beyond monitoring, the Court construes Count Three as against the Committee.[7]

This claim implicates the Prudential Guaranteed Interest Contract Account ("Prudential GIC"), which is alleged to be "the single largest holding in the Plan with $191,230,964 invested as of December 31, 2018." Compl. ¶ 122. Plaintiffs explain that "[t]he Prudential GIC is a stable value insurance general account product that is designed to provide liquidity and a stable rate of return." *Id.* The Plan's assets in the Prudential GIC are invested in Prudential's General Account, which invests the funds into a portfolio of bonds and common stocks. *Id.* Prudential "retains the spread between the overall rate of return on the general account and the interest credited to Plan participants." *Id.* ¶ 123. Pursuant to the arrangement, Prudential receives compensation for "the return on the investment of the Plan funds transferred to the [General Account], plus the nominal 0.1% expense ratio paid by Participants in the GIC," minus "the interest credited to Plan

---

[7] Defendants indicate that "the Committee is the only Defendant against who such a claim could be brought." Def. Br. at 29 n.15. At the same time, Defendants do not challenge Count Three as an improper group pleading or as unduly vague.

participants in the [General Account]." *Id.* Plaintiffs allege that this results in Prudential receiving compensation that "greatly exceeds a reasonable fee in relation to the costs of administering the Prudential GIC." *Id.*

29 U.S.C. § 1106(a) governs prohibited transactions and "erect[s] a categorical bar to transactions between the plan and a 'party in interest' deemed likely to injure the plan." *Sweda*, 923 F.3d at 327 (quoting *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 82 (3d Cir. 2012)). This provision provides, in relevant part, that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(C). To state a claim for a violation of 29 U.S.C. § 1106(a)(1)(D), Plaintiffs must allege that "(1) a fiduciary, (2) causes a plan to engage in a transaction, (3) that uses plan assets, (4) for the benefit of a party in interest, and (5) 'the fiduciary knows or should know that elements three and four are satisfied.'" *Sweda*, 923 F.3d 320 (quoting *Reich v. Compton*, 57 F.3d 270, 278 (3d Cir. 1995) (internal quotation omitted)).

Defendants characterize the Prudential GIC as a "stable value product" which has "the insurance company, here Prudential, take the investment risk (and retain the gains in good years, and eat the losses in bad years), so that participants can have a stable return." Def. Br. at 28-29. If Plaintiffs were correct on the law, Defendants argue, then this type of investment product would be prohibited under ERISA. Defendants argue that the Prudential GIC is a "guaranteed benefit policy" and ERISA explicitly provides that the assets held in Prudential's General Account are not Plan assets so Prudential's retention of the earnings on these assets is not a prohibited transaction. *Id.* at 29.

Plaintiffs have plausibly pled the first two elements of a § 1106(a)(1)(D) claim – they have alleged that the Committee was a fiduciary that caused the Plan to enter into transactions. Compl. ¶¶ 36, 47. But the allegations concerning elements three, four, and five are conclusory at best. For example, the fourth element requires Plaintiffs to show that the arrangement was "for the benefit of a party in interest." As the Third Circuit explained in *Sweda*, the purpose of 29 U.S.C. § 1106(a)(1) is "to rout out transactions that benefit [parties in interest] at the expense of participants." 923 F.3d at 338. The *Sweda* court continued, "Section 1106(a)(1) is not meant to impede necessary service transactions, but rather transactions that present legitimate risks to participants and beneficiaries such as 'securities purchases or sales by a plan to manipulate the price of the security to the advantage of a party-in-interest.'" *Id.* (quoting *Leigh v. Engle*, 727 F.2d 113, 117 (7th Cir. 1984)). The fourth element "require[s] a subjective intent to benefit a party in interest." *Reich v. Compton*, 57 F.3d 270, 279 (3d Cir. 1995). The third Circuit explained as follows:

> [I]f element four did not require a subjective intent to benefit a party in interest, section 406(a)(1)(D) would produce unreasonable consequences . . . . If 'for the benefit of' is read to mean 'having the effect of benefitting,' section 406(a)(1)(D) would appear to prohibit a fiduciary from causing a plan to engage in any transaction that he or she should know would result in any form or degree of benefit for any party in interest, even if the transaction would be highly advantageous for the plan and the benefit for the party in interest would be unintended, indirect, and slight.

*Id.* There are no allegations that the Prudential GIC account was included in the Plan primarily for the benefit of a party in interest.

Plaintiffs' prohibited transaction claim actually appears to focus on allegations that Defendants cannot satisfy exceptions to 29 U.S.C. § 1106(a)(1). 29 U.S.C. § 1108 makes the following exempt from 29 U.S.C. § 1106: "Contracting or making reasonable arrangements with

a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1106(b)(2)(A). The Complaint invokes certain provisions within the Code of Federal Regulations interpreting these exceptions – Plaintiffs suggest that Defendants cannot satisfy these exceptions and, therefore, this was a prohibited transaction because Prudential's compensation was not reasonable. *Id.* ¶¶ 124-25. But the provisions Plaintiffs discuss concern exceptions to § 1106(a) – *i.e.*, the regulations provide guidance as to how some transactions that appear to violate § 1106(a) may be exempt from § 1106(a)'s requirements and, therefore, not prohibited transactions. While Plaintiffs allege that Defendants' do not satisfy these exceptions, Opp. Br. at 26-28, Plaintiffs failed to meet their threshold burden, that is, providing sufficient allegations of a violation of § 1106(a) in the first instance. As a result, the Court concludes that Plaintiffs failed to state a prohibited transactions claim and Count Three is dismissed.

## IV.     CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED in part and DENIED in part.** Count One is dismissed as against Konica and the individual Committee members and, insofar as it invokes the duty of loyalty, it is dismissed as to the Committee. Count Two is dismissed as to the Board of Directors and the individual members of the Board. Count Three is dismissed. The dismissals are without prejudice and Plaintiffs shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiffs do not file an amended complaint within that time, the claims dismissed without prejudice will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated:        May 24, 2021

John Michael Vazquez, U.S.D.J.