# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
### Newark Vicinage

| | |
|---|---|
| RAY ALLEN LUENSE, PAMELA PEARSON, DANIEL F. SETTNEK and NEIL ROSE, Individually and as representatives of a class of participants and beneficiaries on behalf of the Konica Minolta 401(k) Plan, <br><br> Plaintiffs, <br><br> v. <br><br> KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., BOARD OF DIRECTORS OF KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., KONICA MINOLTA 401(K) PLAN COMMITTEE, SANDRA SOHL, SUSAN MCCARTHY, and JOHN DOES 1-30, <br><br> Defendants. | CIV. NO.: 2:20-cv-06827 (JMV- MF) |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................................... 2

    I.    The Konica 401(k) Plan. ...................................................................................................... 2

    II.   The Proposed Class Representatives. .................................................................................. 3

    III.  Plaintiffs' Complaint........................................................................................................... 4

LEGAL STANDARDS ..................................................................................................................... 5

ARGUMENT ..................................................................................................................................... 5

    I.    The Proposed Class Does Not Satisfy Rule 23(a)'s Adequacy Requirement Because Plaintiffs' Theories as to the Imprudence of the Plan's Recordkeeping Fees Creates Fundamental Conflicts Within the Proposed Class. ........................................................... 5

CONCLUSION................................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Almonor v. BankAtlantic Bancorp, Inc.*,
   261 F.R.D. 672 (S.D. Fla. 2009) ........................................................................................... 10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................................ 5

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
   No. 1:15-cv-02062, 2018 WL 4385025 (S.D. Ind. Sept. 14, 2018) ..................................... 6, 10

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ................................................................................................................ 5

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .................................................................................................................. 5

*Dewey v. Volkswagen Aktiengesellschaft*,
   681 F.3d 170 (3d Cir. 2012) ........................................................................................... 1, 5, 10

*Hannan v. Hartford Fin. Servs., Inc.*,
   No. 3:15-CV-395, 2016 WL 1254195 (D. Conn. Mar. 29, 2016) ........................................ 2, 10

*Hannan v. Hartford Fin. Servs., Inc.,* 688 F. App'x 85 (2d Cir. 2017) .......................................... 2

*Hughes v. Nw. Univ.*,
   142 S. Ct. 737 (2022) ............................................................................................................. 10

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ................................................................................................. 11

*Leimkuehler v. Am. United Life Ins. Co.*,
   713 F.3d 905 (7th Cir. 2013) ................................................................................................... 7

*Ned-Sthran v. Methodist Hosps. of Dall.*,
   No. 3:08-cv-00072, 2008 WL 5420601 (N.D. Tex. Nov. 25, 2008) ......................................... 7

*Nunez v. B. Braun Med., Inc.*,
   No. 5:20-cv-04195, 2023 WL 5339620 (E.D. Pa. Aug. 18, 2023) ........................................... 3

*In re Principal U.S. Prop. Acct. ERISA Litig.*
   No. 4:10-cv-00198, 2013 WL 7218827 (S.D. Iowa Sept. 30, 2013) ................................... 6, 10

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
   15 F.4th 259 (3d Cir. 2021) .................................................................................................. 5

*Spano v. Boeing Co.*,
   633 F.3d 574 (7th Cir. 2011) ............................................................................................... 11

*Torres v. Am. Airlines, Inc.*,
   No. 4:18-cv-00983, 2020 WL 3485580 (N.D. Tex. May 22, 2020) ........................................ 11

*Valley Drug Co. v. Geneva Pharms., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) ................................................................................. 1, 5, 6, 10

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................................. 5

## INTRODUCTION

Plaintiffs, four former participants in the Konica Minolta 401(k) Plan (the "Plan"), allege that Defendants Konica Minolta Business Solutions U.S.A. Inc. ("Konica" or the "Company") and the Retirement Plans Advisory Committee (the "Committee") violated the Employee Retirement Income Security Act of 1974, as amended ("ERISA") in connection with the Plan's recordkeeping expenses and investment options, and the monitoring of Plan fiduciaries.  Complaint ("Compl.") ¶¶ 82-89, 96, 121, 127-155 (Dkt. No 1).  For each of their claims, Plaintiffs seek to represent a class of "[a]ll persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between June 4, 2014 and the present (the "Class Period")" (the "Proposed Class").  Mem. of Law in Supp. of Pls.' Mot. for Class Certification ("Mem.") at 1.[1]  The Court should deny Plaintiffs' Motion for Class Certification ("Motion") because the Proposed Class is rife with irreconcilable conflicting interests.

Third Circuit precedent precludes certification of a class when there is "[a] fundamental conflict [] where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012) (alteration original) (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).  *See also Valley Drug Co.*, 350 F.3d at 1190 ("To our knowledge, no circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class.").  There is unquestionably such a fundamental conflict here, as Plaintiffs' own expert conceded that while some members of the Proposed Class were allegedly harmed by the

---

[1] Plaintiffs have indicated that Plaintiff Rose "is not moving to be appointed as a class representative." *Id.* at 1 n.1.

1

recordkeeping arrangements that Plaintiffs challenge, other members of the Proposed Class ***benefited*** from those very same arrangements. *See* Ex. 4, Dyson Dep. Tr. at 189:10-191:1, 196:16-197:12, 199:18-200:19; *see also infra* at pp. 5-12.[2] There is nothing inherently wrong or unusual about the fact that Plan participants were impacted differently by these arrangements, which were—and continue to be—commonly used industrywide. *Cf. Hannan v. Hartford Fin. Servs., Inc.*, No. 3:15-CV-395, 2016 WL 1254195, at *1, *3 (D. Conn. Mar. 29, 2016) (the fact that some plan participants paid more than others and effectively subsidized the cost of other plan participants' plan services is not an ERISA violation), *aff'd*, 688 F. App'x 85 (2d Cir. 2017); *see* Ex. 5, Gissiner Opening Rpt. ¶ 22 ("Revenue sharing is a widely-used methodology for the payment of recordkeeping fees."); Ex. 6, Gissiner Rebuttal Rpt. ¶ 21 ("Many plan sponsors have used, and continue to use an asset-based recordkeeping fee."). Plaintiffs have nonetheless decided to challenge these arrangements, creating fundamental conflicts within the Proposed Class that prevent certification. Accordingly, the Court must deny Plaintiffs' Motion.

## FACTUAL BACKGROUND

**I.     The Konica 401(k) Plan.**

The Plan is a defined contribution retirement plan allowing participants to set aside, in their individual Plan accounts, a portion of their salaries for retirement. Gissiner Opening Rpt. ¶ 13. The Plan offers a broad array of investment options, including a lineup of mutual funds that cover major asset classes (domestic equity, bonds, and international equities), a stable value fund, collective investment trusts ("CITs"), and actively and passively managed funds. *Id.* ¶ 16.

The Plan's recordkeeper for the entirety of the proposed Class Period was Prudential

---

[2] All citations to exhibits ("Ex.") refer to exhibits described in and attached to the concurrently filed Declaration of William J. Delany.

2

Retirement Insurance and Annuity Company ("Prudential").  *See id.* ¶ 20.  From the beginning of the proposed Class Period until June 30, 2016, Prudential's recordkeeping fees were paid by Plan participants through a combination of revenue sharing and direct payments.  *Id.*  Under revenue sharing, a portion of the investment fees normally paid by plan participants to the investment manager is shared with the plan's recordkeeper, "reduc[ing] or "eliminat[ing] recordkeeping fees that plan participants would otherwise have to pay through a direct charge."  *Nunez v. B. Braun Med., Inc.*, No. 5:20-cv-04195, 2023 WL 5339620, at *4-5 (E.D. Pa. Aug. 18, 2023).  Effective July 1, 2016, Prudential's recordkeeping fees were paid through an asset-based charge.  Gissiner Opening Rpt. ¶ 40.  "An asset-based fee results in each participant being charged proportionately based on their participant balance[.]" *Id.* ¶ 41.

## II. The Proposed Class Representatives.

**Plaintiff Luense** has participated in the Plan from the beginning of the proposed Class Period through the present.[3]  During that period, he invested in the following challenged funds: the Mid Cap Growth/Artisan Partners Fund; and the Prudential International Growth/Artisan Partners Fund.[4]

**Plaintiff Pearson** participated in the Plan from the beginning of the proposed Class Period until 2020, when she withdrew from the Plan.[5]  During that period, she invested in the following challenged funds: the Retirement Goal 2020 Fund; and the Principal LifeTime Hybrid 2025 CIT.[6]

**Plaintiff Settnek** has participated in the Plan from the beginning of the proposed Class

---

[3] Luense Decl. ¶ 1; Ex. 1, Luense Dep. Tr. at 32:14-33:9, 52:16-19.
[4] Luense Decl. ¶ 6.
[5] Pearson Decl. ¶ 1; Ex. 2, Pearson Dep. Tr. at 17:20-25, 41:18-42:13.
[6] Pearson Decl. ¶ 6.

Period through the present.[7] During that period, he invested in the following challenged funds: the Retirement Goal 2020 Fund; the Principal LifeTime Hybrid 2020 CIT; the Prudential Mid Cap Growth/Artisan Partners Fund; and the Prudential International Growth/Artisan Partners Fund.[8]

### III. Plaintiffs' Complaint.

Plaintiffs filed their Complaint on June 4, 2020, naming as Defendants Konica, the Company's Board of Directors (the "Board") and its members, and the Committee and its members. In Count I of the Complaint, Plaintiffs alleged that Defendants breached their duties of prudence and loyalty by (1) not including more index funds in the Plan's investment lineup; (2) not including cheaper alternative investments in the Plan; and (3) allowing Plan participants to pay excessive recordkeeping fees. Compl. ¶¶ 82-89, 96-121, 127-148. In Count II, Plaintiffs alleged that Konica, the Board, and individual Board members failed to adequately monitor Plan fiduciaries. *Id.* ¶¶ 149-155. In Count III, Plaintiffs alleged that the Plan's investment in the Prudential GIC was a prohibited transaction under ERISA. *Id.* ¶¶ 156-161.

Defendants filed a motion to dismiss the Complaint (Dkt. No. 23) on August 25, 2020 for failure to state a claim and for lack of standing. On May 24, 2021, this Court granted in part and denied in part Defendants' motion to dismiss (Dkt. No. 51). The Court dismissed Count I in its entirety against Konica, the Board and its members, and the individual Committee members, and dismissed Count I against the Committee insofar as it alleged a breach of the duty of loyalty. The Court dismissed Count II in its entirety as to the Board and its members. The Court also dismissed Count III in its entirety. As such, the only remaining claims are Plaintiffs' claim for breach of the duty of prudence asserted against the Committee and Plaintiffs' failure to monitor claim asserted

---

[7] Settnek Decl. ¶ 1; Ex. 3, Settnek Dep. Tr. at 21:11-16, 23:16-18.
[8] Settnek Decl. ¶ 6.

against Konica.

## LEGAL STANDARDS

A "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). Plaintiffs seeking to represent a class must satisfy each of the requirements of Rule 23(a), as well as one of the three subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 266 (3d Cir. 2021).

To meet the requirements of Rule 23(a), a plaintiff must "prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation." *Russell*, 15 F.4th at 265-66 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). "Rule 23 does not set forth a mere pleading standard," but instead requires that "[a] party seeking class certification must ***affirmatively demonstrate*** his compliance with the Rule." *Dukes*, 564 U.S. at 350 (emphasis added).

## ARGUMENT

I. **The Proposed Class Does Not Satisfy Rule 23(a)'s Adequacy Requirement Because Plaintiffs' Theories as to the Imprudence of the Plan's Recordkeeping Fees Creates Fundamental Conflicts Within the Proposed Class.**

As the Third Circuit has recognized, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey*, 681 F.3d at 183. "Certain intra-class conflicts may cause the interests of the representative plaintiffs to diverge from those of the unnamed class members. . . . *A fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class*." *Id.* at 183-84 (alteration original) (emphasis added) (citing *Valley*

5

*Drug Co.*, 350 F.3d at 1189). "In such a situation, the named representatives cannot vigorously prosecute the interests of the class through qualified counsel because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members." *Valley Drug Co.*, 350 F.3d at 1189; *see id.* at 1190 ("To our knowledge, no circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class.").

There are unquestionably fundamental conflicts here because, as discussed in more detail below, Plaintiffs' own expert, Eric Dyson, conceded that while some members of the Proposed Class were harmed by the recordkeeping arrangements that Plaintiffs challenge, other members of the Proposed Class actually **benefited** from those very same arrangements. *See infra* at pp. 7-12. Plaintiffs completely ignore these discrepancies, implying that there can never be a conflict between the interests of an ERISA class and the interests of ERISA class representatives "because they are all acting on behalf of the Plan." Mem. at 15. That is wrong as a matter of law. *See, e.g.*, *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 1:15-cv-02062, 2018 WL 4385025, at *5 (S.D. Ind. Sept. 14, 2018) ("Rather than a trivial level of intra-class conflict . . . [t]he inclusion of two different [recordkeeping] fee structures, in the proposed class, in which some class members paid less than the proposed market rate under the revenue sharing arrangement, while some members pay less under the current flat fee is precisely the type of broad class certification that the Seventh Circuit has rejected where class treatment becomes untenable."); *In re Principal U.S. Prop. Acct. ERISA Litig. ("In re Principal")*, No. 4:10-cv-00198, 2013 WL 7218827, at *33 (S.D. Iowa Sept. 30, 2013) ("Plaintiffs are unable to demonstrate their ability to adequately protect the interests of the putative class, as their interests are in conflict with those of both class and non-class investors in the Account. . . . When there is an economic conflict between putative class

6

members, or even class and non-class members, there is a concern that the class representatives cannot adequately represent the interests of those not directly involved in the litigation process but who have a stake in the outcome nonetheless."); *Ned-Sthran v. Methodist Hosps. of Dall.*, No. 3:08-cv-00072, 2008 WL 5420601, at *4 (N.D. Tex. Nov. 25, 2008) (holding that named plaintiff was not an adequate class representative, in part because "there is an apparent conflict between [plaintiff] and members of the class she seeks to represent with regard to the relief sought. Most notably, her success and subsequent injunctive relief and recovery in this action would alter the structure of the Plan[.] . . . Present participants in the Plan would . . . quite possibly see diminished benefits and options if [plaintiff] is successful in her injunctive requests").

Mr. Dyson admitted that there were multiple such conflicts within the Proposed Class that cover the entire proposed Class Period:

*First*, Mr. Dyson opined that Plan participants who were invested in the Prudential Guaranteed Investment Contract Account ("Prudential GIC") prior to July 1, 2016, when revenue sharing was used to pay for a portion of the Plan's recordkeeping fees, "paid excessive recordkeeping fees compared to participants invested in other Plan investment options." Ex. 7, Dyson Opening Rpt. ¶ 60.[9] Of the Plan's investment options during that timeframe, the Prudential GIC provided the most revenue sharing. *Id.* As a result, revenue share from the Prudential GIC, which held a little over a quarter of the Plan's assets, covered over half of the Plan's recordkeeping costs from 2014 to mid-2016. *Id.* ¶ 61.[10] Mr. Dyson opined that this effectively created two classes

---

[9] The Plan used revenue sharing to partially pay recordkeeping fees until June 30, 2016. Gissiner Opening Rpt. ¶ 20 ("Between the start of the Class Period and June 30, 2016, the Plan paid Prudential a recordkeeping fee through a combination of revenue sharing and direct payments.").

[10] The fact that some participants may contribute more than others to recordkeeping costs in a revenue share environment is unremarkable given that investment options offer differing levels of revenue sharing, *see Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 909 (7th Cir. 2013)—as Mr. Dyson himself recently admitted, *Nunez*, No. 5:20-cv-04195, Dkt. 132 ("Trial Tr. Day 2")

7

of participants—i.e., those who were not invested in the Prudential GIC paid less than their fair share of recordkeeping fees, and those who were invested in the Prudential GIC paid more than their fair share of recordkeeping fees. Dyson Dep. Tr. at 189:10-191:1.[11] According to Mr. Dyson, 4,868 of the Plan's 8,810 participants with account balances at year-end 2016 were not invested in the Prudential GIC, meaning that approximately *55% of participants did not pay enough in recordkeeping fees* (under Mr. Dyson's theory) because revenue share from the Prudential GIC paid the lion's share of the Plan's recordkeeping fees. Ex. 8, Dyson Rebuttal Rpt. ¶ 25; Dyson Opening Rpt. ¶¶ 59-62. Thus, *less than half of the Proposed Class* shares the same interests as Plaintiffs with respect to their complaints about the Plan's use of revenue sharing from 2014 to mid-2016 to partially pay for the Plan's recordkeeping fees.

*Second*, Mr. Dyson opined that "it was clearly in the better interest of the Plan and the participants" to pay for recordkeeping expenses using a flat, per-participant charge rather than the asset-based fee implemented by the Committee on July 1, 2016. Dyson Opening Rpt. ¶ 49; *see also* Dyson Dep. Tr. at 196:3-14. Here again there are effectively two classes of winners and losers

---

at 148:24-149:13 (attached hereto as Ex. 9); *see also* Trial Tr. Day 2 at 21:14-15, 23:11-13 ("I would state that it's not uncommon for a plan to have different amounts of revenue share. . . . It is possible, but I will say difficult, to find a fund lineup that has equal revenue share.").

[11] "Q: So you're indicating that you believe that the participants in the stable value fund paid too much. What portion of the 15 basis points that was applied to the stable value fund prior to the fee leveling do you contend were excessive? A: I'm contending that when 26 to 27 percent of the assets pay 63 to 65 percent of the fees that's -- that's hurting one group of participants in the plan. Q: And benefiting others, correct? A: The ones that -- correct. It's benefiting the other -- those that hold the other, roughly, 75 percent of assets. Q: Right. This is the winners and losers we talked about in B. Braun where some people benefit from the structure and other people don't correct? A: In this structure, yes. Some pay more; some pay less. Q: And so somebody in your scenario here in the stable value fund would be a loser, but somebody not in the stable value fund would be a winner, correct? A: To various degrees, and the reason I say to various degrees, we also have to take the individual's account value into play as well. Q: But whether it be a penny or two thousand dollars, somebody who's, based upon your theory, in the stable value fund would be a loser, and somebody who's not in the stable value fund would be a winner? Correct? A: Generally speaking, yes."

according to Mr. Dyson—i.e., some Plan participants were better off under the asset-based fee arrangement than they would have been under Mr. Dyson's preferred approach, including participants with smaller account balances, and some participants were better off under a flat, per-participant arrangement. Dyson Dep. Tr. at 196:16-197:12.[12] In other words, the Proposed Class also contains *entirely different* groups of participants with conflicting interests with respect to how the Plan's recordkeeping fees were paid from mid-2016 through present. Accordingly, an unknown number of Plan participants do not share the same interests as Plaintiffs with respect to their criticism of the Committee's decision to switch to an asset-based fee, effective mid-2016, to pay for recordkeeping expenses.

***Third***, Mr. Dyson opined that as a result of Prudential's selection as the Plan's recordkeeper after the 2016 Request For Proposal ("RFP"), participants who were ***not*** invested in the Prudential GIC "paid higher than necessary recordkeeping fees" because those participants did not benefit from the tradeoff of paying slightly higher recordkeeping fees to Prudential in exchange for the higher crediting rate offered by the Prudential GIC (or otherwise receive additional services to justify the additional costs). Dyson Rebuttal Rpt. ¶¶ 23-26.[13] Mr. Dyson testified during his

---

[12] "Q: Okay. And you would agree that in the asset base[d], the five-basis-point approach as opposed to the $38 charge for everybody, that some participants would have been better off in that situation with the asset-based charge, correct? A: Compared -- better off compared to what, if you can clarify? Q: Compared to if the charge was $38 across the board for everybody. A: Certainly there would be some that would be better off and some that would be worse off. Q: So it would be another situation where if we adopted your view, you would have winners and losers, correct? A: Yes. There would be differences in who it applies best to, but certainly[.]"

[13] As Defendants' Expert, Steven Gissiner, opined, "the superiority of the net crediting rate [of the Prudential GIC] more than made up for the slightly higher recordkeeping costs of Prudential's [recordkeeping] bid." Gissiner Opening Rpt. ¶ 38. For example, while selecting Empower as the Plan's recordkeeper would have resulted in approximately $67,500 in recordkeeping savings, Empower's equivalent to the Prudential GIC would have provided participants with approximately ***$2.2 million less in interest credits annually***. *Id.* This was a key factor in the Committee's decision to select Prudential as the Plan's recordkeeper. *See id.* ¶ 39 ("The Committee agreed that although Prudential's proposed recordkeeping fee was slightly higher than the other bidders, the

9

deposition that this created yet another situation where there were two classes of participants—i.e., the decision to select Prudential as recordkeeper, despite their slightly higher fee, in order to retain the Prudential GIC left some participants better off and other participants worse off. Dyson Dep. Tr. at 199:18-200:19. According to Mr. Dyson, 3,942 of the Plan's 8,810 participants with account balances at year-end 2016 and 3,261 of the Plan's 8,812 participants with account balances at year-end 2021 were invested in the Prudential GIC, meaning that approximately ***37% to 45% of participants*** during this timeframe benefited from the very arrangement that Plaintiffs challenge as imprudent.[14] In other words, anywhere from ***over one-third to nearly half*** of Plan participants ***do not*** share the same interests as Plaintiffs and others in the Proposed Class with respect to this theory of liability.[15]

In light of the above, the Court should not certify the Proposed Class given Plaintiffs' blatant failure to satisfy their obligations under Rule 23(a)(4). *See Dewey*, 681 F.3d at 183-84; *Valley Drug Co.*, 350 F.3d at 1189; *Bell*, 2018 WL 4385025, at *5; *In re Principal*, 2013 WL 7218827, at *33; *see also Almonor v. BankAtlantic Bancorp, Inc.*, 261 F.R.D. 672, 677 (S.D. Fla.

---

crediting rate of the GIA was superior and would provide participants with greater opportunity for enhanced performance over the long term.").

[14] Mr. Dyson's rebuttal report stated that there were 8,112 Plan participants with account balances at year-end 2021, but the number of Plan participants listed as being invested in the Prudential GIC (3,261) and not being invested in the Prudential GIC, i.e., "paid higher than necessary recordkeeping fees," (5,551) add up to 8,812. *See* Dyson Rebuttal Rpt. ¶ 25.

[15] Again, the fact that Plan participants were impacted differently is not a breach of fiduciary duty. *Cf. Hannan*, 2016 WL 1254195, at *1, *3. As Mr. Gissiner opined, the Committee understood "the interaction between recordkeeping fees and the crediting rate of the [Prudential GIC]" and properly considered the tradeoffs in evaluating the 2016 RFP responses. Gissiner Opening Rpt. ¶¶ 38-40; *see also* Dyson Dep. Tr. at 197:13-199:17 (agreeing that "it's appropriate for a plan sponsor to consider the fact that there would be winners and losers" in making a decision as to the best approach for a plan's participants). ERISA fiduciaries like the Committee are often charged with evaluating competing considerations such as this, and courts "must give due regard to the range of reasonable judgments a fiduciary may make based on [their] experience and expertise." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).

2009) ("[T]he class collapses into distinct groups of winners and losers, as there is a fundamental conflict between those who were harmed and those who were benefitted by Defendants' breaches. . . . Plaintiff's economic interests and objectives differ in a significant way from the economic interests and objectives of class members she purports to represent. . . . Therefore, class certification under these circumstances is inappropriate. In sum, the Court finds that Plaintiff is not an adequate representative[.]").

Moreover, if any of Plaintiffs' theories ultimately succeed, the Committee may be required to switch recordkeepers, change how recordkeeping fees are paid, or remove the Prudential GIC from the Plan's investment lineup—actions that would be to the detriment of Plan participants who benefited from the reasonable judgment calls made by the Committee. Plaintiffs therefore cannot adequately represent these members of the Proposed Class, despite purporting to sue on behalf of the Plan. *See Spano v. Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011) ("It is not enough to say that the named plaintiffs want relief for the plan as a whole, if the class is defined so broadly that some members will actually be harmed by [the] relief"); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315 (5th Cir. 2007) (vacating class certification in part because the relief sought would be contrary to the interests of certain absent class members); *Torres v. Am. Airlines, Inc.*, No. 4:18-cv-00983, 2020 WL 3485580, at *12 (N.D. Tex. May 22, 2020) ("Because the relief Plaintiffs seek . . . would harm some class members they seek to represent, a fundamental conflict prevents the representative Plaintiffs from representing the class.").

In sum, the only portion of the Proposed Class that shares similar interests as Plaintiffs with respect to their theories of imprudence regarding the Plan's recordkeeping fees are Plan participants who: (1) **were** invested in the Prudential GIC until July 2016 and, therefore, paid more than their fair share of recordkeeping fees according to Mr. Dyson; (2) **were not** invested in the

11

Prudential GIC thereafter and, therefore, paid higher recordkeeping fees than necessary according to Mr. Dyson; and (3) would have been better off if a flat, per-participant fee was used to pay recordkeeping costs beginning in July 2016, rather than an asset-based charge—at most, a small group of Plan participants with larger account balances that would not even include Plaintiffs, preventing them from serving as class representatives. Accordingly, the Court must deny Plaintiffs' Motion.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Class Certification.

Dated: September 22, 2023

Respectfully submitted,

By: */s/ William J. Delany*
William J. Delany (NJ ID # 049031994)
Lars C. Golumbic (admitted *pro hac vice*)
Samuel I. Levin (admitted *pro hac vice*)
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Avenue, NW
Washington, DC 20006-5811
Telephone: (202) 857-0620
Facsimile: (202) 659-4503
E-Mail: wdelany@groom.com
          lgolumbic@groom.com
          slevin@groom.com

Philip W. Crawford (NJ ID # 023431980)
**GIBBONS, P.C.**
One Gateway Center
Newark, NJ 07102-5310
Telephone: (973) 596-4803
E-Mail: pcrawford@gibbonslaw.com

*Counsel for Defendants
Konica Minolta Business Solutions U.S.A.,
Inc. and the Konica Minolta 401(k) Plan
Committee*