NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAY ALLEN LUENSE, PAMELA PEARSON, DANIEL F. SETTNEK, and NEIL ROSE, Individually and as representatives of a class of participants and beneficiaries on behalf of the Konica Minolta 401(k) Plan,<br><br>   Plaintiffs,<br><br>   v.<br><br>KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., BOARD OF DIRECTORS OF KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., KONICA MINOLTA 401(K) PLAN COMMITTEE, SANDRA SOHL, SUSAN MCCARTHY, and JOHN DOES 1-30,<br><br>   Defendants. | No. 20cv6827 (EP) (JSA)<br><br>OPINION |

**PADIN, District Judge.**

This putative class action, brought under the Employee Retirement Income Security Act ("ERISA"), arises out of allegations that fiduciaries of Konica Minolta Business Solutions U.S.A., Inc.'s ("Konica") 401(k) plan (the "Plan") breached their duties of loyalty and prudence and engaged in a prohibited transaction. Plaintiffs[1] move for class certification pursuant to Federal Rule of Civil Procedure 23. D.E. 114 ("Mot."). Plaintiffs seek certification of the following class:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Konica

---

[1] Plaintiff Neil Rose does not move to be appointed as a class representative. Accordingly, for purposes of this Motion, "Plaintiffs" refers to Ray Allen Luense, Pamela Pearson, and Daniel F. Settnek.

>   Minolta 401(k) Plan, at any time between June 4, 2014 and the present (the "Class Period").[2]

*Id.* Plaintiffs also seek appointment as class representatives and Edelson Lechtzin LLP and Berger Montague PC as class counsel. D.E. 114-1 at 3 ("Br."). Defendants oppose the motion solely on the basis of the adequacy prong of the class action certification inquiry. D.E. 115 ("Opp'n"). Plaintiffs reply. D.E. 116 ("Reply"). For the reasons below, the Court will **GRANT** Plaintiffs' motion.[3]

I.   BACKGROUND

   A.  The Plan

The Plan is a single-employer "defined contribution" or "individual account" plan within the meaning of 29 U.S.C. § 1002(34). D.E. 1 ¶ 41 ("Complaint" or "Compl."). Otherwise put, it is a retirement savings account which allows participants to invest money contributed from their wages, or received from their employer in matching funds, in investment options selected by the Plan's fiduciaries. *Id.* ¶ 40; Br. at 3.

Defined contribution retirement plans are categorized by asset size. Compl. ¶ 6. The Plan qualifies as "large" because it had more than $810 million in assets as of December 31, 2017 and more than $766 million in assets as of December 31, 2018. *Id.* ¶¶ 6-7. Plaintiffs[4] participated in the Plan and invested in certain options offered by the Plan during the Class Period. *Id.* ¶¶ 19-22.

Participants' benefits are limited to the amount contributed to each participant's account. *Id.* ¶ 41. As such, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account. *Id.* The available menu of investment options is curated

---

[2] Hereinafter the "Proposed Class."
[3] The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b).
[4] Including Neil Rose.

by Defendants, specifically by the Konica Minolta 401(k) Plan Committee (the "Plan Committee"), who "determines the appropriateness of the Plan's investment offerings and monitors investment performance." *Id.* ¶ 47. Defendant Konica is the "plan sponsor" and "administrator," and delegated "certain administrative and investment related duties" to the Plan Committee. *Id.* ¶¶ 30, 35. Plaintiffs named various other Defendants, including Sandra Sohl and Susan McCarthy, employees of Konica who purportedly serve as fiduciaries of the Plan; the Board of Directors of Konica (the "Board") and its individual members, through which Konica appointed Plan fiduciaries; the Plan Committee's individual members; and John Does 21-30, including but not limited to Konica officers and employees who are/were Plan fiduciaries. *Id.* ¶¶ 28-29, 32-40. The Plan's recordkeeper is Prudential Retirement Insurance and Annuity Company ("Prudential"), which is paid "per participant recordkeeping and other administrative costs during the Class Period." *Id.* ¶ 136.

### B. The Allegations

Plaintiffs allege that ERISA requires Defendants, as fiduciaries of the Plan, to manage and administer the Plan solely in the interest of the Plans' participants and be bound by the duties of loyalty and prudence. *Id.* ¶¶ 59-60 (citing 29 U.S.C. § 1104(a)(1)). Plaintiffs allege that Defendants breached these duties by "includ[ing] and retain[ing] in the Plan many mutual fund investments that were more expensive than necessary"; "fail[ing] to have a proper system of review in place" to ensure participants were being "charged appropriate and reasonable fees"; and "fail[ing] to leverage the size of the Plan to negotiate lower expense ratios for certain investment options maintained and/or added to the Plan during the class period." *Id.* ¶¶ 66-67. Specifically, Plaintiffs allege that "for at least 20 out of the 26 funds currently in the Plan, there are many equivalent investments that would cost participants far less than the funds selected for the Plan by

3

Defendants." *Id.* ¶ 104. Plaintiffs believe, and Defendants do not contest, that "most funds in the Plan stayed the same during the Class Period." *Id.* ¶ 102. Plaintiffs also allege that many funds were retained despite their underperformance, comparing in-plan funds and low fee alternatives based on net expense ratio, average annual return, and performance of the in-plan funds relative to their benchmarks. *Id.* ¶ 116-17. Defendants allegedly breached their duties by failing to regularly analyze the performance of such investments. *Id.* ¶ 114-15. This resulting in the Plan's offering of high-priced investment options "instead of other funds that were materially less expensive and had similar, if not identical, characteristics." *Id.* ¶ 101.

Defendants also allegedly breached their fiduciary duties by failing to monitor and control Prudential's recordkeeping fees. *Id.* ¶ 131-36. Plaintiffs aver that Defendants were required to closely monitor the recordkeeping fees; ensure the recordkeeper's compensation did not exceed reasonable levels; and remain informed about overall trends in the marketplace and conduct Requests for Proposals at regular intervals. *Id.* ¶¶ 133-35. Recordkeeping expenses are charged on a per-participant basis in the vast majority of plans. *Id.* ¶ 130. Plaintiffs contest the per-participant amount paid to Prudential (increasing from $22.98 in 2015 to $92.54 in 2018) and amounts paid through revenue sharing[5] arrangements as unreasonable. *Id.* ¶¶ 136-37.

Plaintiffs further allege that Konica and the Board breached their duties to monitor other fiduciaries by failing to monitor and evaluate the performance of the Plan Committee; failing to monitor the processes by which Plan investments were evaluated; and failing to remove Plan

---

[5] Recordkeeping expenses can either be paid through revenue sharing or directly from plan assets. *Id.* ¶ 131. The parties briefly address exactly when the Plan utilized revenue sharing versus asset-based fee arrangements during the Class Period. *Id.*; Opp'n at 5-6. As the Court understands, prior to 2016, the Plan paid Prudential its recordkeeping fee through a combination of revenue sharing and direct payments. Opp'n at 7 n.9. After mid-2016, recordkeeping fees were paid by using an asset-based fee at 5 basis points per participant. D.E. 115-8 ¶ 49.

Committee members whose performance was inadequate. *Id.* ¶ 153. Plaintiffs also assert that Defendants breached their fiduciary duties by paying excessive compensation to Prudential. *Id.* ¶¶ 156-61. Plaintiffs describe the Prudential Guaranteed Interest Contract Account ("Prudential GIC"), which they allege is the "single largest holding in the Plan with $191,230,964 invested as of December 31, 2018." *Id.* ¶ 122. The Plan's assets in the Prudential GIC are invested in Prudential's General Account, which invests the funds into a portfolio. *Id.* Prudential "retains the spread between the overall rate of return on the general account and the interest credited to Plan participants." *Id.* ¶ 123. Prudential's aggregate compensation, Plaintiffs aver, "greatly exceeds a reasonable fee in relation to the costs of administering the Prudential GIC." *Id.*

Count I of Plaintiffs' Complaint alleges breach of fiduciary duties of loyalty and prudence against Konica and the Plan Committee. *Id.* ¶¶ 142-48. Count II alleges that Konica and the Board failed to adequately monitor the Plan Committee. *Id.* ¶¶ 149-55. Count III alleges a violation[6] of 29 U.S.C. § 1108(b)(2) based on excessive and unreasonable compensation paid to the Plan's recordkeeper, Prudential. *Id.* ¶¶ 156-61.

The Court previously issued an Opinion granting in part and denying in part a motion to dismiss the Complaint. D.E. 51. Following that Opinion and the completion of discovery, Plaintiffs' claims now only include: (1) that the Plan Committee violated its duty of prudence by (a) selecting and retaining unreasonably expensive and/or poorly performing investment options and (b) allowing Prudential to be paid excessive compensation and (2) that Konica violated its duty to monitor its appointees to the Plan Committee. Br. at 7. The Motion seeks class certification under Fed. R. Civ. P. 23(a) and 23(b)(1). *Id.* at 8, 17. Plaintiffs also seek appointment as class

---

[6] Judge Vazquez previously construed Count Three, which did not specify against which Defendant(s) it was brought, as against the Plan Committee. D.E. 51 at 20.

representatives and Edelson Lechtzin LLP and Berger Montague PC as class counsel. *Id.* at 3. Defendants concede all aspects of Plaintiffs' Motion other than the adequacy of representation prong, which they argue fails because of a purported intra-class conflict. Opp'n at 5.

## II.     LEGAL STANDARDS

"[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)-(b)). Under Rule 23(a), a class may only be certified if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). These four prongs are often referred to as numerosity, commonality, typicality, and adequacy. *Comcast Corp. v. Behrend*, 569 U.S. 27, 27 (2013). Defendants contest only the adequacy prong. *See* Opp'n at 5.

If Plaintiffs satisfy the Rule 23(a) requirements, they must also show that the class is appropriate under Rule 23(b)(1), (b)(2), or (b)(3). *Marcus*, 687 F.3d at 590. Here, Plaintiffs argue[7] for certification under Rule 23(b)(1), which provides for certification if:

> [P]rosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

---

[7] Plaintiffs argue in the alternative that class certification is proper under Rule 23(b)(3), but the Court need not engage in this inquiry.

The decision to certify a class is left to the discretion of the court. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008), *as amended* (Jan. 16, 2009). "[T]he requirements set out in Rule 23 are not mere pleading rules." *Marcus*, 687 F.3d at 591 (alteration in original) (quoting *Hydrogen Peroxide*, 552 F.3d at 316). "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Id.* "To determine whether there is actual conformance with Rule 23, a district court must conduct a 'rigorous analysis' of the evidence and arguments put forth." *Id.* (citation omitted). This requires "a thorough examination of the factual and legal allegations." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001). "The Court's authority to examine the merits of a case on a motion for class certification, however, should not be overstated. While a district court may delve beyond the pleadings for the purpose of determining whether the plaintiff has satisfied Rule 23's requirements, it may not inquire into the merits in order to determine whether the elements of each claim may be satisfied." *Franco v. Connecticut Gen. Life Ins. Co.*, 289 F.R.D. 121, 130 (D.N.J. 2013).

### III. ANALYSIS

#### A. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40," the prong is met. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Plaintiffs submitted the Plan's Form 5500s from 2015-2021, which indicate that the Plan had more than 8,000 participants with account balances during the Class Period. Br. at 10 (citing Exs. 5-11). The Court finds that this requirement is satisfied. *See In re Schering Plough Corp. ERISA Litig.*, 589

F.3d 585, 596 (3d Cir. 2009) (finding that numerosity was "plainly satisfied . . . since ERISA 502(a)(2) claims are brought on behalf of a Plan, and over 10,000 people were invested in the Schering-Plough Stock Fund").

### B. Commonality

Commonality is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Commonality "demands that a plaintiff demonstrate that the proposed classwide proceeding is capable of generating 'common answers apt to drive the resolution of the litigation.'" *Franco*, 289 F.R.D. at 130 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Here, Plaintiffs assert that the Plan Committee breached its fiduciary duties by selecting and retaining imprudent investment options and failing to monitor excessive payments to Prudential. Br. at 11. Each putative class member's ERISA claim for breach of fiduciary duty "centers on the common factual question" of whether those investment options were in fact imprudent and whether the Plan Committee adequately monitored the compensation paid for recordkeeping services. *Franco*, 289 F.R.D. at 131; *see also Schering Plough*, 589 F.3d at 596-97 (finding whether defendants breached fiduciary duties was common question of law or fact).

Plaintiffs argue additional common questions of law and fact, including whether Konica failed to monitor the Plan Committee appointees. Br. at 12. As such, the "glue" holding the class together is whether fiduciary duties owed to the entire class were breached and "[t]he common answer to the factual question of whether [Defendants] violated ERISA . . . is sufficient . . . to

advance the resolution of the entire class." *Lutz Surgical Partners PLLC v. Aetna, Inc.*, No. 15-2595, 2023 WL 2153806, at *9 (D.N.J. Feb. 21, 2023). As such, commonality is met.

### C. Typicality

Rule 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To evaluate typicality, courts ask whether the named plaintiffs' claims are "typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (cleaned up). "The standard for demonstrating typicality is undemanding and requires that 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant.'" *Roofer's Pension Fund. v. Papa*, 333 F.R.D. 66, 75 (D.N.J. 2019) (quoting *Newton*, 259 F.3d at 183-84). The typicality assessment addresses three concerns:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Schering Plough*, 589 F.3d at 599.

Here, Plaintiffs' "legal claims, alleging several breaches of fiduciary duty, are identical to those of the class [they] seek to represent." *Id.* Plaintiffs' claim that the Plan Committee made imprudent investment options by neglecting lower-cost alternatives, Br. at 11; Compl. ¶ 105, is traceable to the same practice irrespective of which exact fund the participants invested in. *See Boley v. Univ. Health Servs., Inc.*, 36 F.4th 124, 134 (3d Cir. 2022). This is because the crux of Plaintiffs' claim is that the Plan *deprived* participants of the "opportunity" to grow their retirement savings by investing in alternative investment options which "would have been available . . . if

9

Defendants had satisfied their fiduciary obligations." Compl. ¶ 17.  The flawed *selection* process makes uniform the claims for all Plan participants regardless of whether the named Plaintiffs invested in the exact funds alleged to be imprudent.  *Boley* is instructive:

> Each participant's potential recovery, regardless of the fund in which he or she invested, is under the same legal theory—Universal's breach of its fiduciary duty under ERISA in managing the Plan's investment options. Likewise, each participant who was charged excessive fees when investing in any of the Plan's funds can trace his or her injury to the same practice—Universal's alleged failure to properly consider expense ratios when selecting and updating the Plan's investment options.

36 F.4th at 134.  Therefore, even if named Plaintiffs or absentees have not invested in all of the disputed funds, the allegations underlying those claims—Defendants' conduct and Plaintiffs' participation in the Plan during the relevant period—are "shared by the rest of the proposed class." *Schering Plough*, 589 F.3d at 599.  Otherwise put, the "'common allegation for each class member'"—the alleged imprudence in question—is "'comparably central to the claims of the named plaintiffs as to the claims of the absentees.'"  *Boley*, 36 F.4th at 134-35 (quoting *Baby Neal*, 43 F.3d at 57).

The same is true of Plaintiffs' allegations that the Plan Committee breached its fiduciary duty by failing to monitor the excessive recordkeeping fees.  Br. at 11.  Regardless of how those fees were collected—through revenue sharing arrangements or an asset-based plan—the cost is technically borne by all participants, typically on a per-participant basis.  Compl. ¶¶ 130-31.  Whether the Plan Committee failed to achieve lower per-participant costs by leveraging the Plan's growing size is based on the same legal theory and factual circumstances for the named Plaintiffs and the Proposed Class.  *Id.* ¶ 139.  So, too, is the inquiry for Plaintiffs' final remaining claim: whether Konica failed to adequately monitor its appointees to the Plan Committee.  Br. at 12.  Prong one is accordingly met.

As to prong two, Defendants "bear[] the burden to 'show some degree of likelihood a unique defense will play a significant role at trial." *Roofer's Pension Fund*, 333 F.R.D. at 75 (quoting *Beck*, 457 F.3d at 300). Defendants here do not plainly contest the typicality prong and certainly not this aspect of it. *See generally* Opp'n. Therefore, prong two is met.

However, Defendants do contest prong three: the alignment of interests and incentives between Plaintiffs and the rest of the class. *Id.* at 5. Defendants' argument is that there are two classes of Plan participants: (1) those who economically benefited from the recordkeeping fee arrangement and (2) those who were harmed by it.[8] *Id.* at 6-9. Accordingly, they contend that Plaintiffs' interests—and their challenge of recordkeeping fee arrangements—are not aligned with those of certain Proposed Class members. The Court finds typicality is met because any potential intra-class conflict on the excessive fees claim is resolved by the relief Plaintiffs assert they seek. *See* Reply at 5 ("Plaintiffs are not requesting disgorgement for particular class members.").

The crux of this case is Plaintiffs' challenge that Defendants breached their fiduciary duties. It is immaterial whether that theory of liability challenges conduct that did not overtly harm certain members of the Proposed Class. First, class members who purportedly benefited from the recordkeeping fee arrangements would not be harmed by the relief sought in this action. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 814 (7th Cir. 2013) ("There appears to be no risk that any SVF investor who benefited from Lockheed's imprudent management would have her Plan assets reduced as a result of this lawsuit."); *Tracey v. MIT*, No. 16-11620, 2018 WL 5114167, at *6 (D. Mass. Oct. 19, 2018) ("Although some class members may not benefit if the named plaintiffs choose one theory of liability over the other, those who benefitted from pre-consolidation investments would not be required to disgorge profits from investments that are later found to have

---

[8] Defendants do not argue any intra-class conflict exists with respect to Plaintiffs' other claims.

11

been imprudent."); *see also* Reply at 5. Second, Plaintiffs seek a determination on whether Defendants breached fiduciary duties, which is of legal interest to all Plan participants. *See Sacerdote v. New York Univ.*, No. 16-6284, 2018 WL 840364, at *2 (S.D.N.Y. Feb. 13, 2018) ("If, in fact, plaintiffs are correct that the inclusion of these funds was a breach of the duty of prudence, then no plan participant would have a legal interest in continuing to invest in a plan that was adjudged imprudent.").

The Court is not bound by Defendants' primary authority, *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 15-2062, 2018 WL 4385025 (S.D. Ind. Sept. 14, 2018), and finds it inapposite. In *Bell,* Plaintiffs argued that the fees paid to its recordkeeper, Vanguard, were excessive under two fee structures—revenue sharing until September 2013, and a flat fee per participant after that. *Id.* at *4. The *Bell* court found an intra-class conflict because 51% of unnamed class members in the proposed class that paid below the benchmark under the revenue sharing fee structure were not harmed. *Id.* at *5. It is too early to tell whether the purportedly benefited class members in this case present a majority.[9] Even so, *Bell* is guided by caselaw that found typicality failed because some class members did not invest in the challenged funds. Here, Plaintiffs challenge the lack of *options*. Accordingly, no matter the number of class members who

---

[9] Defendants acknowledge that prior to July 1, 2016, revenue sharing was used to pay for a *portion* of the recordkeeping fees. Opp'n at 7. Only some of those fees were paid out of the Prudential GIC. Therefore, even if 4,868 of the Plan's 8,810 participants did not invest in the Prudential GIC—from which the lion's share of fees was paid—the overall number of Plan participants who "benefited" is likely less than half. *Id.* at 8. As to the post-2016 asset-based fee arrangement, Defendants argue that "some" Plan participants were better off than those who would have been under a flat, per-participant arrangement preferred by Plaintiffs' expert. *Id.* at 9. Lastly, Defendants surmise that anywhere from "over one-third to nearly half" of Plan participants have conflicting interests with Plaintiffs because Prudential was kept as recordkeeper after 2016 in order to retain the Prudential GIC, and many participants were invested in the Prudential GIC. *Id.* at 10.

benefited or were harmed by investments in particular funds, everyone was potentially harmed by the lack of lower-cost alternatives.  Compl. ¶ 103.

*Bell*, and the supplemental authority Defendants submitted, D.E. 117, rely primarily on *Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011), a consolidated appeal of two classes certified under Rule 23(b)(1) by the district court.  The Seventh Circuit in *Spano* primarily took issue with typicality because some participants never invested in funds that plaintiffs objected to. *Id.* at 586.

But the Third Circuit distinguished that case.  In *Boley*, named plaintiffs alleged that defendant offered an unnecessarily high-cost *suite* of funds and "lacked a prudent investment evaluation process resulting in needlessly high expense ratios across the Plan." 36 F.4th at 135-36.  As in *Boley*, Plaintiffs here contest the *menu* of investment options offered that deprived participants of the "opportunity" to invest in alternative investment options which "would have been available . . . if Defendants had satisfied their fiduciary obligations." Compl. ¶ 17.

The *Spano* court held that the class definition for the second class—who argued that the plan charged excessive administrative fees—similarly failed to satisfy the typicality and adequacy requirements of Rule 23(a).  633 F.3d at 590.  The court did not detail its reasoning beyond that, but its finding as to the first class that "[i]t is not enough to say that the named plaintiffs want relief for the plan as a whole, if the class is defined so broadly that some members will actually be harmed by that *relief*" helps inform this analysis. *Id.* at 587 (emphasis added).

Plaintiffs assure the Court that the relief sought will *not* harm any Plan participants in potential conflict with the named Plaintiffs.  Reply at 5.  Any potential conflict is eliminated when the Court analyzes the proffered interests of the named Plaintiffs and the Proposed Class: determining whether Defendants breached their fiduciary duties, in which case "it is difficult to

imagine class members who have benefited from, or are content to pay, pointless fees." *Boley*, 36 F.4th at 136.  Accordingly, typicality is met.

### D. Adequacy

Under Rule 23(a)(4), a class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class."  "Rule 23(a)'s adequacy of representation requirement serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (cleaned up).  This requirement involves a two-pronged test: "first, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; and second, the plaintiff's counsel must be qualified to represent the class." *Lutz*, 2023 WL 2153806, at *10.  As discussed in the Court's typicality analysis, Plaintiffs' interests are sufficiently aligned with the absent members of the proposed class.  Defendants do not contest the adequacy of class counsel.  Edelson Lechtzin LLP and Berger Montague PC have competently represented Plaintiffs thus far through motion practice and discovery.  The Court also accepts counsels' representations as to their experience in class action litigation and ERISA class actions specifically.  D.E. 114-2 ¶¶ 5-14; D.E. 114-16 ¶¶ 7-9.  Edelson Lechtzin LLP and Berger Montague PC satisfy the adequacy requirement.

### E. The Proposed Class is Ascertainable

The Court also finds that the proposed class is "currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 593.  This is often considered a prerequisite for class actions, and although uncontested by Defendants, the Court addresses it for thoroughness.[10]  Courts must determine: (1) whether the defined class specifies "a particular group that was harmed

---

[10] The Court notes that class certification under Rule 23(b)(1) may not require ascertainability. *See Lutz*, 2023 WL 2153806, at *7.

14

during a particular time frame, in a particular location, in a particular way" and (2) whether it can "ascertain the class's membership in an objective manner." *Lutz*, 2023 WL 2153806, at *7 (cleaned up). Plaintiffs' inclusion of Form 5500s for the Plan during the Class Period ensures that the Court can objectively and readily ascertain the proposed class of Plan participants harmed by potential breaches of fiduciary duties. Br. at 10 (citing Exs. 5-11).

### F. The Class May be Certified Under Rule 23(b)(1)[11]

After satisfying the Rule 23(a) requirements, Plaintiffs must also show that the class is appropriate under Rule 23(b)(1), (b)(2), or (b)(3). *Marcus*, 687 F.3d at 590. Although Defendants do not contest the appropriateness of certification under Rule 23(b)(1), the Court independently finds that certification is proper. Rule 23(b)(1) provides for certification if:

> [P]rosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Certification under both Rule 23(b)(1)(A) and (B) are appropriate. Under Rule 23(b)(1)(A), multiple actions alleging that Defendants breached their fiduciary duties could lead to inconsistent results and incompatible standards for Defendants' conduct moving forward. *See In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 5-1151, 2009 WL 331426, at *12 (D.N.J. Feb. 10, 2009) (finding certification under Rule 23(b)(1)(A) proper because "[p]ursuing separate actions [for ERISA fiduciary duty claims] would raise a substantial risk that different courts would reach inconsistent conclusions about the standards of conduct for the fiduciaries, and

---

[11] The Court need not address Plaintiffs' argument in the alternative for certification under Rule 23(b)(3).

that different courts might order conflicting injunctive or other remedies").

Further, Plaintiffs' claims are "brought on behalf of the Plan and alleg[e] breaches of fiduciary duty on the part of defendants that will, if true, be the same with respect to every class member," and thus "Rule 23(b)(1)(B) is clearly satisfied." *Schering Plough*, 589 F.3d at 604-05. As Plaintiffs meet the requirements of Rule 23(a) and 23(b)(1), the Court will certify the proposed class.

## IV.  CONCLUSION

For the foregoing reasons, the Court will **GRANT** Plaintiffs' motion for class certification and appointment of class representatives and counsel, D.E. 114-20.  An appropriate Order accompanies this Opinion.

Dated: May 30, 2024

*Evelyn Padin*
Evelyn Padin, U.S.D.J.